1
2
3
4
5
6                          IN THE UNITED STATES DISTRICT COURT

7                            FOR THE DISTRICT OF ARIZONA

8

9    United States of America,              )          CR 05-961-TUC-DCB(CRP)
                                            )
10              Plaintiff,                   )      **REPORT AND RECOMMENDATION**
                                            )
11   vs.                                     )
                                            )
12                                           )
     Alfred Arvizu, et al.,                  )
13                                           )
                Defendants.                  )
14                                           )
     _____ )
15

16

17
          Defendant Gomez filed a Motion to Sever (Docket 316) and a Motion for Disclosure
18
     (Docket 315).  Defendants Luevanos, Arvizu, Rosales, Molina, Chavez, and Vega join in
19
     these motions.  The motions were argued to the Court on October 23, 2006.  Based on the
20
     briefing and argument of the parties, it is the recommendation of this Court that the District
21
     Judge, after his independent review and consideration, order that the Motion to Sever be
22
     granted in part and denied in part, and the Motion for Disclosure be denied without prejudice
23
     as being premature.
24
     **I. Statement of the Case**
25
          The original indictment in this matter was filed under seal on May 11, 2005.  All
26
     seven defendants bringing the instant motions were named as defendants.  Count 1 alleged
27
     that Arvizu and Gomez engaged in an illegal continuing criminal enterprise between June
28

2004 and May 2005.  Count 2 charged the moving defendants and four others, Aviles, Leos, and Jesus and Ivan Chacon, with conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana.  Count 3 alleged that Arvizu, Gomez, Aviles, Leos, Rosales, Molina, and Ivan Chacon conspired to violate the Hobbs Act, 18 U.S.C. § 1951, by posing as sellers of illegal drugs and then robbing the purchasers.  As overt acts, the indictment alleged a robbery by Arvizu of T.H. on June 25, 2004.  Count 3 also alleged that Gomez, Arvizu, Aviles and Leos divided $85,000 that had been stolen at gunpoint on January 23, 2005.  The remaining eight counts alleged other drug and firearms charges against various defendants.

Apparently, one or more search warrants issued, which were executed on May 18, 2005.  Pursuant to arrest warrants, Arvizu, Gomez, Rosales, Vega, Luevanos, Chavez, Gallegos, and Molina were arrested that same day.

On May 19, 2005, a complaint was issued charging Jerome Alvarez with possession with intent to distribute more than 500 grams of cocaine.  On June 8, 2005, a Superceding Indictment was filed adding Alvarez as a co-defendant and adding felon in possession of firearm charges against Molina and Rosales, alleging such possession occurred on the date of arrest, May 18, 2005.

On September 28, 2005, a Second Superceding Indictment was filed charging a total of sixteen defendants with various charges.  This indictment still charged Arvizu and Gomez with continuing criminal enterprise in Count 1, and separate drug distribution and Hobbs Act conspiracies in Counts 2 and 3.  Additional felon in possession of firearm charges were alleged against Luevanos and Vega.  The operative date of possession for Luevanos was March 30, 2005, and for Vega was May 18, 2005.

On May 31, 2006, the Third Superceding Indictment was filed.  For the first time, AUSA's Ferraro and Clemens were listed as attorneys for Plaintiff.  Continuing criminal enterprise allegations against Arvizu and Gomez were separated into Counts 1 and 2, with no alleged start date.  Arvizu was named alone in Count 1, Gomez alone in Count 2.  Count 3 alleged the conspiracy to distribute more than 1,000 kilograms of marijuana and possess

1    with intent to distribute more than 1,000 kilograms of marijuana against the seven moving

2    defendants and Ivan Chacon.  Count 4 alleged a conspiracy to violate the Hobbs Act against

3    Arvizu, Molina and Robert Yanez-Aguayo, asserting that Arvizu and Molina would pose as

4    drug dealers to rob potential purchasers.  Aguayo allegedly assisted Arvizu in enticing T.H.

5    to travel from Baltimore to Tucson to purchase drugs.  Count 4 alleges Arvizu and Molina

6    robbed T.H. of $60,000 on June 25, 2004.  Counts 5 and 6 allege carjacking and forcible theft

7    of T.H.'s vehicle against Arvizu and Molina.  Count 19 added the allegation of counterfeit

8    money against Arvizu and Gomez.  Five defendants named in the Second Superceding

9    Indictment were removed as defendants and Aguayo was added as a defendant.

10           On September 20, 2006, the Fourth Superceding Indictment was filed.  The allegations

11   were unchanged from the previous indictment except for alleging in Count 11 that Chavez

12   possessed a firearm in connection with an illegal drug transaction on March 30, 2005.

13           Aguayo was arrested on October 11, 2006, and arraigned that same day.  Aguayo and

14   his counsel were not present at the argument on the instant motions, took no position thereon,

15   and, in all likelihood, were never served with the motions and the Government's response.

16           There are presently twelve defendants in this case.  Seven have joined in the motions

17   pending before this Court.  The status of the other five defendants follows.  As noted above,

18   Aguayo was only recently arrested and arraigned.

19           Defendant Jorge Gallegos entered a plea of guilty on July 6, 2006.  Defendant

20   Gallegos failed to show for sentencing on September 28, 2006, and a bench warrant was

21   issued for his arrest, which has not, as yet, been returned.

22           Several arrest warrants have issued for Pedro Jesus Leos and Ivan Chacon, all of

23   which have been returned unexecuted.  The most recent arrest warrants for Leos and Chacon

24   were issued on September 21, 2006.  Leos and Ivan Chacon have never appeared in this

25   matter to date.

26           Guerrero has appeared and is in custody.  He has not joined in these defense motions.

27   Guerrero is named only in Count 9, alleged to have possessed with intent to distribute 186

28   kilograms of marijuana on March 30, 2005.

## II. **Motion to Sever Counts and Parties**

Defendants assert five bases, discussed below, for severing counts or parties in this action.  If the matter is to be severed into two trials, Defendants propose that the first trial group be Arvizu, Molina, Luevanos and Chavez.  The second group would be Gomez, Vega, Guerrero, Aguayo and Rosales.

The Government opposes the motion completely, asserting that sixty to eighty witnesses would need to be recalled if the matter was severed as proposed by the Defendants. The Government asserts that no legal cause has been shown to justify severing the matter either as to parties or counts.  Finally, the Government suggests that if the matter was severed into two groups of defendants, one group should consist of Arvizu, Gomez, Rosales, and Molina and the second group should consist of Luevanos, Chavez, Vega, Guerrero and Aguayo.

This Court recommends that Counts 4, 5 and 6 be severed and Counts 7, 16, 17 and 18 be bifurcated for purposes of trial.  The Court's reasoning follows.

### A. **Antagonistic Defenses**

Gomez asserts, with sparse reference to specifics, that the conflicting interests of the many defendants, particularly of Arvizu and Gomez, establish that "there is no doubt the defendants will point fingers at each other as the culpable participants." (Motion to Sever, p. 6, 11-12).

For conflicting defenses to require severance , they must be mutually exclusive:

> Only where the acceptance of one party's defense will preclude the acquittal of the other party does the existence of antagonistic defenses mandate severance.

*United States v. Ramirez*, 710 F.2d 535, 546 (9th Cir.1983).  Courts can also consider whether multiple hostile witnesses will be presented by one defendant against another, whether the defendant will be subject to vigorous cross-examination both from the prosecutor and the co-defendant's attorney, and whether the co-defendant "was the government's best witness against the other." *United States v. Berkowitz*, 662 F.2d 1127, 1133-34 (5th Cir.1981).

- 4 -

1    Presently, the only plausible antagonistic defenses are between Gomez and Arvizu.

2    One may attempt to convince the jury that the other was the sole criminal mastermind for this

3    venture.  However, that is certainly not clear at this point.

4    Gomez suggests that he may want to testify as to the counterfeiting charge, but not as

5    to the remaining counts. (Reporter's Transcript, October 23, 2006, p. 29, l.1-9 (hereinafter

6    "RT __")).  Presumably, Gomez' defenses to the drug charges will be that the Government

7    did not satisfy its burden of proof.  As yet, there is no indication that Arvizu intends to testify

8    against Gomez and to what purpose.  If Arvizu is not guilty on Count 1, that does not suggest

9    Gomez' guilt or innocence on Count 2.  Here, the defense of the failure of evidence does not

10   establish exclusively antagonistic defenses. *United States v. Magdaniel-Mora*, 746 F.2d 715,

11   720 (11th Cir.1984).

12   Defendants have not shown that antagonistic defenses require severance.

13   **B. Spillover**

14   Gomez also argues that there is comparatively little evidence against him and no

15   evidence involving him with firearms.  Therefore, having to face trial together with

16   defendants much more culpable and involved in more serious conduct will have an unfair

17   "spillover" effect that cannot be adequately cured by jury instructions.

18   In considering whether the potential unfair "spillover" of evidence introduced against

19   a co-defendant justifies severance, the court must determine whether "the jury can reasonably

20   be expected to compartmentalize the evidence as it relates to separate defendants, in view of

21   its volume and the limited admissibility of some of the evidence." *United States v. Cuozzo*,

22   962 F.2d 945, 950 (9th Cir.1992); *United States v. Escalante*, 637 F.2d 1197, 1201 (9th

23   Cir.1980), *cert. denied* 449 U.S. 856, 101 S.Ct. 154 (1980).  A defendant seeking severance

24   based on "spillover" from evidence introduced against other defendants must demonstrate

25   the inadequacy of limiting instructions to the jury.  *United States v. Nelson*, 137 F.3d 1094,

26   1108 (9th Cir.1998).

27   In this case, the most unfair "spillover" evidence is the evidence against Arvizu and

28   Molina concerning the drug rip-off of T.H. alleged to have occurred on June 25, 2004.  For

1  reasons discussed *infra.*, this Court believes Counts 4, 5, and 6 should be severed eliminating

2  that prejudice, and the corresponding prejudice against Molina when defending Counts 4, 5,

3  and 6.

4        The prior felony convictions of Molina, Rosales and Vega do not present "spillover"

5  concerns for the co-defendant, but rather fairness concerns to those three defendants.  Those

6  considerations again, are analyzed separately, *infra*.

7        As to the remaining allegations, no unfair "spillover" is shown.  That Gomez did not

8  possess or use a firearm in connection with these events, if true, is of no moment.  If Gomez

9  conspired with co-defendants that did use weapons, he is just as responsible for that

10  exacerbating conduct. *United States v. Hungerford*, 465 F.3d 1113 (9th Cir.2006).

11        Except as discussed in Section E below, no "spillover"issue appears presently, and it

12  can be anticipated that appropriate instructions can cure any "spillover" problems that arise

13  at trial.

14        **C. Counts 7, 16, 17, and 18 - Felon in Possession Allegations**

15        Allegations are made against defendants Molina, Rosales and Vega that they, as prior

16  convicted felons, unlawfully possessed firearms. (*See* Counts 7, 16, 17, and 18).  Defendants

17  assert this is unfairly prejudicial.

18        Counts have long been concerned with the unfairness of a prosecutor adding a felon

19  in possession of a firearm charge to bolster a weak case with what would be otherwise

20  inadmissible evidence.  *United States v. McCarter*, 316 F.3d 536, 540-41 (5th Cir.2002);

21  *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir.1986), *as amended by* 798 F.2d 1250 (9th

22  Cir.1986), *cert. denied* 489 U.S. 1032, 109 S.Ct. 1169 (1989).  In determining whether the

23  trial court abused its discretion by not severing the felon in possession counts, the Ninth

24  Circuit Court of Appeals looks to two factors: "the strength of the evidence against a

25  defendant and the nature and efficacy of the methods employed to guard against prejudice."

26  *United States v. Nguyen*, 88 F.3d 812, 816-17 (9th Cir. 1996).  Thus, in *Nguyen* the Court

27  found no abuse of discretion in failing to sever.  Nonetheless, the *Nguyen* opinion recognizes

28  that "severance or bifurcation is the preferred alternative." *Id.* at 818.  The Court in *Nguyen*

referred to the analysis in *United States v. Joshua*, 976 F.2d 844, 848 (3rd Cir.1992) that suggests that bifurcation is the best balance of the interests of judicial economy and prejudice to the defendant. *Nguyen*, 88 F.3d at 817.

This Court agrees that bifurcating the trial, so that the jury does not consider Counts 7, 16, 17 and 18 until having deliberated to verdict on the remaining counts, is the most appropriate, non-prejudicial alternative to consolidation of the felon in possession charges with the remaining counts. Molina, Vega and Rosales apparently were found in possession of weapons at the time of their arrest. (*See* Counts 6, 17 and 18). Minimal witnesses will be necessary to prove those allegations, should that ultimately be necessary, and that testimony would not be relevant to the remaining allegations. The allegations in Count 7 against Molina involve the date December 13, 2004, which does not appear elsewhere in the indictment. If the evidence concerning the other counts establishes Molina's possession of a firearm on that date, it would not need to be presented again, since the same jury will consider his guilt or innocence on all counts. Otherwise, separate testimony concerning the events of December 13, 2004, can be presented after the jury's deliberations on the other counts.

### D. Count 19 - the testimonial dilemma

Gomez contends that his Fifth Amendment right is interfered with because he may want to testify on the counterfeit currency charge in Count 19, but assert his Fifth Amendment right against self-incrimination as to the remaining counts. Specifically, Gomez' attorney argued:

> So we're going to be trying this case on a drug case and then we're going to be defending here on a case involving counterfeit, whether it was counterfeit, and *maybe* my client wants to talk about that, but he doesn't want to talk about the drugs....
> Well, first of all, that money was never recovered and I think you know, that's just an allegation they're making, and they can bring that into the drug case if they want, but it shouldn't be tried with the counterfeit case.

1    (RT 28, l. 2-6, 10-13 (emphasis added)).  Count 19 is only brought against defendants Gomez

2    and Arvizu.  No defendant other than Gomez has suggested any issue on which they wish to

3    testify while at the same time refraining from testifying on other issues.

4         The Government asserts that Count 19 is inextricably intertwined with the conspiracy

5    alleged in Count 3 because money was flash money, presumably to show potential sellers of

6    drugs that they had sufficient funds to close the deal (RT 21).  Even though it appears that

7    it is alleged that defendants at least sometimes portrayed themselves as sellers, not buyers,

8    of illegal drugs, it is intuitive that having "flash" money would be helpful to a drug dealer in

9    the course of negotiating an illegal drug transaction.

10        Joinder of counts is the rule, not the exception.  *United States v. Whitworth*, 865 F.2d

11   1268, 1277 (9th Cir.1988).  In this case the Government has a significant interest in presenting

12   the evidence about the counterfeit currency to support the drug conspiracy allegations.

13        Gomez' attorney appears to concede this testimony may be relevant and perhaps

14   admissible, but argues nonetheless the prosecution of Count 19 must be severed to allow

15   defendant's testimony.  If defendant's unusual assertion that the counterfeit currency was

16   never recovered is correct, the likelihood and importance of defendant testifying may be

17   increased.

18        At this time, however, there is only defense counsel's suggestion that "maybe" Gomez

19   will want to testify.  To justify severance based on a defendant's desire to testify on one but

20   not other counts, "a defendant must demonstrate that he has important testimony to give

21   concerning some counts and a strong need to refrain from testifying on others." *Id.*  In

22   *Whitworth*, the defendant wanted to testify that it was agents of the Soviet Union that bought

23   government secrets, but did not want to testify about income tax evasion for the unreported

24   income. *Id.*  The Court determined that it "would not have been inconsistent with this

25   strategy for Whitworth to be cross-examined regarding the receipt of the unreported cash."

26   *Id.* at 1277-78.  Similarly, in this case, cross-examining Gomez about the illegal drug

27   conspiracy may be appropriate, depending on what testimony Gomez ultimately presents on

28   Count 19.  Regardless, severance on this basis at this time is not appropriate because of the

equivocal premise to Gomez testifying.  Gomez simply has not shown as yet "important testimony" exists as to Count 19. *United States v. Hutchison*, 22 F.3d 846, 853 (9th Cir. 1993).

For the reasons stated above, the request to sever Count 19 from the remaining counts should be denied at this time.

### E. Counts 4, 5, and 6 - the June 25, 2004 drug rip-off

Gomez complains that Counts 4, 5 and 6, the counts related to the robbery of T.H. by Arvizu and Molina, are highly prejudicial to him and it is not a related transaction.  Gomez emphasizes that this event involved cocaine not marijuana and was almost a year prior to any allegations of Gomez' involvement in this case.

The Government argues that all of the evidence in the case is admissible as to all counts. (Government's Response, p.4).  Presumably, the Government is relying on Rule 404(b), Fed.R.Evid., to support their argument that this evidence would be admissible to prove motive, knowledge, plan, or *modus operandi*.  The Government also asserts they have evidence of related bad acts of Gomez dating back to July 4, 2003, apparently also involving Mr. Leos. (RT, p. 23-24).

There appear to be five separate events alleged as substantive counts in the Fourth Superceding Indictment:

- the June 25, 2004 robbery and carjacking of T.H. by Molina and Arvizu (Counts 4, 5, and 6);
- the possession and transportation of 800 kilograms of marijuana between March 7 to March 21, 2005, asserted against Gomez, Leos, Chacon, and Rosales (Count 8);
- the March 30, 2005 rip-off of 186 kilograms of marijuana asserted against Arvizu, Gomez, Vega, Rosales, Chavez, and Luevanos (Counts 9, 10, 11);
- the April 19, 2005 rip-off of 186 kilograms of marijuana asserted against Arvizu, Gomez, Leos, Vega, and Luevanos (Counts 13 and 14);

1       • the April 23, 2005, rip-off of 181 kilograms of marijuana asserted against

2       Arvizu and Gomez (Count 15).

3       These allegations are made against nine defendants, not including the seller/victims

4 of the rip-offs and Aguayo, the middleman between Arvizu and T.H.  Of those nine, seven

5 are not involved in the June 25, 2004 event.  Of the two involved in the June 25, 2004 event,

6 Molina and Arvizu, Molina is not involved in any of the other four events, and Arvizu is not

7 involved in one of them.

8       The evidence related to Count Eight is not admissible as to Counts 4, 5, and 6, and the

9 evidence concerning March 30, 2005, April 19, 2005, and April 23, 2005, is not admissible

10 as to Molina.  The evidence related to Counts 4, 5, and 6 is not admissible as to seven of the

11 eight defendants charged in the other counts, again excluding the seller/victims.

12       Rule 8(b) allows multiple defendants to be charged in the same indictment when they

13 "participated in the same act or transaction or in the same series of acts or transactions

14 constituting an offense or offenses."  "Rule 8(b) is construed liberally in favor of joinder."

15 *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir.1993).

16       In determining whether the "same series of acts or transactions exists," the Court looks

17 for a "logical relationship" between the offenses. *United States v. Sarkisian*, 197 F.3d 966,

18 975 (9th Cir.1999).  The "logical relationship" is more than factual similarity, but rather "the

19 existence of a common plan, scheme or conspiracy." *Id.* at 976.

20       The Government argues that such a common plan, scheme and conspiracy ties the

21 defendants with the events of June 25, 2004 and the events of March and April 2005.

22 Defendants dispute that.  Presently, there have been insufficient facts presented to the Court

23 to determine the issue.

24       But even assuming joinder under Rule 8(b) is authorized, the Court must still consider

25 whether severance is required under Rule 14, because the "joinder of offenses or defendants

26 in an indictment...appears to prejudice a defendant or the government."  The joinder of the

27 robbery of T.H. counts with the other counts substantially prejudices Molina, who is not

28 named in any of the events other than the T.H. robbery.  Moreover, it substantially prejudices

1   Gomez, and six other defendants who are not involved in the T.H. robbery. These significant

2   problems can be corrected by separating out the one event, the robbery of T.H., for separate

3   trial.

4          The Government is asking the Court to rely on cautionary instructions to protect

5   against the inherent prejudice of trying the robbery of T.H. case with the marijuana

6   conspiracy case. Substantial prejudice runs against all defendants except Arvizu when those

7   two conspiracies are tried together. Only Arvizu is a common element to both conspiracies,

8   at least insofar as the allegations of the substantive counts. The ongoing and final

9   instructions to the jury can be made much simpler and management of the case easier if

10  Counts 4, 5 and 6 are severed.

11         The Government raises concerns about judicial economy. However, the Hobbs Act

12  conspiracy case presumably centers on the testimony of T.H. Questions of intent, motive or

13  plan seem superfluous. If the issue of the identity or *modus operandi* of Arvizu arose,

14  testimony from one or more of the three victim/sellers or one or more agents could be used.

15  There should be no practical need for all 70-80 witnesses proposed by the Government to

16  establish Arvizu's identity for the isolated events of June 25, 2004.

17         For these reasons, the Court recommends that Counts 4, 5 and 6 be severed from the

18  remaining counts.

19  **III. Motion for Disclosure**

20         The Government concedes that *Brady, Jencks* and *Giglio* disclosures must be made.

21  The only question is the time of those disclosures. The Government suggests that disclosing

22  this information ten days before trial will be adequate. Gomez argues that the

23  cumbersomeness of obtaining state court records, particularly pre-sentence reports, requires

24  earlier disclosure.

25         The principle reason asserted for delay in disclosure is the potential for violence

26  against the Government's witnesses. Given the allegations in the indictment, it is clear those

27  concerns are legitimate. Nonetheless, because of the difficulties in obtaining confidential

28  records from Superior Court, ten days prior to trial may well be inadequate.

1    At this point in time the dispute is premature.  This case was previously designated

2    a complex case.  These disclosure scheduling issues can be raised with District Judge Bury

3    at a case status and management conference.

4    **WHEREFORE**, it is the report and recommendation of this Court that the District

5    Judge, after his independent review and consideration, enter an order as follows:

6    1.    Counts 7, 16, 17 and 18 are bifurcated, to be considered by the same jury

7          following the trial on the remaining counts.

8    2.    Counts 4, 5 and 6 are severed and will be tried separately from the remaining

9          counts in this case.

10   3.    All other relief requested in the Motion to Sever is denied.

11   4.    The Motion for Disclosure is denied without prejudice to refile.

12   Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within

13   10 days of being served with a copy of this report and recommendation.  If objections are not

14   timely filed, the party's right to de novo review may be waived.  *See United States v. Reyna-*

15   *Tapia*, 328 F.3d 1114, 1121 (9 th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

16   If objections are filed, the parties should direct them to the District Court by using the

17   following case number: **CR 05-961-TUC-DCB**.

18   The Clerk of the Court is directed to send a copy of this Report and Recommendation

19   to all parties in this case.

20   DATED this 4th day of December, 2006.

21

22

23   **CHARLES R. PYLE**
     UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

- 12 -